UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EARL D. WILSON,

               Plaintiff,                     Case Number 15-10747
                                                 Honorable David M. Lawson

v.

TROTT LAW, P.C.,

               Defendant,

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS OR FOR SUMMARY JUDGMENT

Under the Fair Debt Collection Practices Act (FDCPA), "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Nor may the debt collector "use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f.

Plaintiff Earl D. Wilson fell behind on his mortgage. The note holder hired the Trott law firm to collect the debt. As part of its routine practice, the law firm sent Wilson a letter that itemized the various charges included in the total amount of $196,642.54, which Trott claimed was owing. One of the listed items was denominated "corporate advances," a term not used in any of the loan documents. In that category, Trott apparently lumped together certain charges such as property inspection fees and attorney fees and costs incurred when the plaintiff fell behind on his mortgage. Wilson says Trott's letter violated the two sections of the FDCPA mentioned above because the term "corporate advances" masked the nature of the charges, and he was unable to determine why and if he actually owed the money.

The defendant has filed a motion for summary judgment, arguing that its practice did not violate the FDCPA; the plaintiff disagrees. The Court heard oral argument on June 24, 2015, and now concludes that Trott's letter was not "unfair or unconscionable," because the mortgage actually requires the plaintiff to pay the charges Trott was attempting to collect. Therefore, there was no violation of section 1692f. However, a fact question remains whether the use in a collection letter of a term of art — "corporate advances" — unconnected to any corresponding term in the note or mortgage, is materially misleading and therefore runs afoul of section 1692e(2)(A) (which prohibits a "false representation of . . . the character . . . of any debt") or section 1692e(10) (which prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt"). Therefore, the Court will grant in part and deny in part the motion for summary judgment, and dismiss that part of the amended complaint that is based on 15 U.S.C. § 1692f.

## I.

Plaintiff Earl D. Wilson, who now lives in Fenton, Michigan, obtained a loan on September 8, 2004 in the amount of $160,000 from Countrywide Home Loans, Inc. As security for the loan, he granted a mortgage on his home in Redford, Michigan to Countrywide and its successors and assigns. On March 17, 2011, the mortgage was assigned to The Bank of New York Mellon. The loan currently is serviced by non-party Bayview Loan Servicing, LLC. The plaintiff defaulted on the mortgage by failing to make regular monthly payments since November 1, 2010. Thereafter, Bayview retained defendant Trott Law, P.C., a law firm specializing in foreclosures located in Farmington Hills, Michigan to initiate foreclosure proceedings.

On November 6, 2014, the plaintiff received a letter from Bayview stating in part:

Dear EARL D WILSON:

This is a formal notice that the mortgage loan referenced above remains in default and the lender intends to foreclosure.
* * *
The loan is due for 11/1/2010 and subsequent payments, plus-late charges, fees and costs.  As of today, the total delinquency and reinstatement amount is $63,897.79 which consists of the following:

| | | |
|---|---|---|
| Next Payment Due Date | | 11/1/2010 |
| Total Monthly Payments Due: | | $59,207.62 |
| Late Charges: | | $147.78 |
| Other Charges: | Uncollected NSF Fees: | $0.00 |
| | Other Fees: | $0.00 |
| | Corporate Advance Balances: | $0 |
| | Unapplied Balance | ($0.00) |

**TOTAL YOU MUST PAY TO CURE DEFAULT**      **$63,897.79**

Pl.'s Resp., Ex. 2.  A month later, on December 8, 2014, the plaintiff received a letter from Trott stating:

**THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT.  ANY INFORMATION WE OBTAIN WILL BE USED FOR THAT PURPOSE.**

***

Dear Borrower(s):
This office represents Bayview Loan Servicing, LLC.  This matter was referred to this office to foreclose the mortgage.  Under the terms of the mortgage, our client has elected to accelerate the total indebtedness due and owing under the mortgage.  Because of interest, and other charges that may vary from day to day, the total amount due may differ depending on the day of payment.

As of the date on this letter the total indebtedness is:

| | |
|---|---|
| Principal Balance | $146,778.82 |
| Unpaid Interest | $38,454.04 |
| Late Charges | $147.78 |
| Corporate Advance | $1,944.89 |
| Escrow Advance | $9,317.01 |
| *Total:* | $196,642.54 |

Am. Compl., Ex. 4.

-3-

The letter notified the plaintiff that he could request validation of the debt within 30 days;

the plaintiff did so in a timely manner.  The validation request stated:

> Dear Trott:
> You are seeking money from me for a debt amount I dispute.  Please cease and desist until you validate and verify the debt
> PURSUANT TO THE FDCPA, I WOULD LIKE THE FOLLOWING PROVIDED:
> $ THE NAME AND ADDRESS OF THE ORIGINAL CREDIT;
> $ VERIFICATION OF THE DEBT OWED TO BAYVIEW; AND
> $ A COPY OF ANY VERIFICATION OF JUDGMENT IF IT EXISTS;
>
> DO NOT THREATEN MY CREDIT.  I DISPUTE THIS.
>
> If you pass this on to other debt collectors, please advise them that I dispute this debt.  Thank you for your immediate cooperation.
> Earl D. Wilson

Def.'s Mot. Summ. J., Ex. E.

Trott responded to Wilson's request on January 7, 2015 with the following:

> Dear Mr. Wilson:
>
> My client, Bayview Loan Servicing, L.L.C., as servicing agent for The Bank of New York Mellon, as trustee of the CWALT 2004-24CB, has reviewed its records and hereby verifies that your debt is valid.  In support of its validity I have enclosed a payment history for your loan.
>
> The original credit to which you owed this debt was Countrywide Home Loans, Inc., 4500 Park Granada, Calbasas, California 91302.
>
> Very truly yours,
> TROTT LAW, P.C.

Def.'s Mot. Summ. J., Ex. F.

On March 2, 2015, the plaintiff filed a putative class action lawsuit alleging that the

defendant violated the FDCPA and Michigan Collection Practices Act (MCPA).  He filed an

amended complaint on April 14, 2015.  The plaintiff alleges that the defendant has a policy and

practice of sending consumers, like the plaintiff, demands for "corporate advances" without defining what a corporate advance is in the debt collection letters. The plaintiff, noting that corporate advances are not referenced in his mortgage, believes that the defendant is either manufacturing the fees or billing for future costs in violation of 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692f(1), and 1692e(10).

The plaintiff has withdrawn his motion to certify a class pending resolution of the defendant's potentially case-terminating motion. The defendant filed its motion styled in the alternative as a motion for judgment on the pleadings or motion for summary judgment. The defendant has attached various letters and documents to the motion that may extend beyond the pleadings themselves, and the plaintiff has filed affidavits and deposition testimony. Therefore, the Court will treat the motion as one for summary judgment. *See Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010).

## II.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A trial is required only when "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The parties have not seriously contested the basic facts of the case. Where the material facts are mostly settled, and the question before the court is purely a legal one, the summary judgment procedure is well suited for resolution of the case. *See Cincom Sys., Inc. v. Novelis Corp.*, 581 F.3d 431, 435 (6th Cir. 2009).

However, the moving party must demonstrate the absence of a genuine dispute over a material fact before its motion for summary judgment can be granted. In making that assessment, "[t]he court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Alexander v. CareSource*, 576 F.3d 551, 557-58 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 251-52).

### A.

Congress enacted the FDCPA to eliminate "abusive, deceptive, and unfair debt collection practices." 15 U.S.C. § 1692(a). "The Act prohibits a wide array of specific conduct, but it also prohibits, in general terms, any harassing, unfair, or deceptive debt collection practice, which enables 'the courts, where appropriate, to proscribe other improper conduct which is not specifically addressed.'" *Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 533 (6th Cir. 2014) (citing S. Rep. No. 95-382, at 4, 1977 U.S.C.C.A.N. 1695, 1698). As the Sixth Circuit has noted, "the FDCPA is 'extraordinarily broad,' crafted in response to what Congress perceived to be a widespread problem." *Barany-Snyder v. Weiner*, 539 F.3d 327, 611 (6th Cir. 2008) (citing *Frey v. Gangwish*, 970 F.2d 1516, 1521 (6th Cir. 1992)). "Courts use the 'least sophisticated consumer' standard, an objective test, when assessing whether particular conduct violates the FDCPA." *Ibid.* (citing *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir. 2006)). "The Act protects 'all consumers,' the 'shrewd' as well as the gullible, from practices that would mislead the 'reasonable unsophisticated consumer,' one with some level of understanding and one willing to read the document with some care." *Buchanan v. Northland Grp., Inc.*, 776 F.3d 393, 396 (6th Cir. 2015) (internal citations omitted). "Dunning letters that appear misleading only by way of 'bizarre,'

-6-

'idiosyncratic,' or 'nonsensical' readings do not violate the Act." *Ibid.* (quoting *Fed. Home Loan Mortg. Corp. v. Lamar*, 503 F.3d 504, 509 (6th Cir. 2007)).

1.

The focus of the plaintiff's complaint, as noted above, is on the term "corporate advances" in the dunning letter the defendant sent. The plaintiff contends that the demand for repayment of corporate advances violates section 1692f. That section includes as an unfair or unconscionable practice "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). He says that there is no reference in any of the loan documents to that term, and the effort to collect that amount is illegal.

The defendant says that a corporate advance is a fee charged by a lender to cover process costs and is a disbursement for servicing-related expenses rather than escrow expenses, paid with servicer funds that are to be recovered from the borrower. Corporate advances, says the defendant, may include foreclosure expenses, attorney fees, bankruptcy fees, force placed insurance, and other such expenses. The defendant acknowledges that the term does not appear in the mortgage, but it contends that paragraphs 9 and 14 of the mortgage allow the lender to charge the borrower "fees for services performed" and "[a]ny amounts dispersed . . . shall become additional debt . . ." Therefore, the defendant argues, the plaintiff's claim that the corporate advances listed are "not expressly authorized by the agreement creating the debt or permitted by law" is false and at odds with the parties' mortgage.

The pertinent sections of the mortgage state:

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements

-7-

contained in this Security Instrument . . . , then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off . . . . Any amount disbursed by Lender this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

* * *

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees.

Def.'s Mot. Summ. J., Ex. B.

At his 30(b)(6) deposition, Andrew Wayne, the defendant's Senior Title Attorney, described each of the corporate advances for which the defendant billed Wilson. The amounts, he explained, all pertained to property inspection fees and attorney fees and costs accrued when the plaintiff fell behind on his mortgage. The mortgage explicitly authorizes those fees and costs. The defendant did not violate 15 U.S.C. § 1692f by billing for them.

Nevertheless, the plaintiff insists that Trott has violated 15 U.S.C. § 1692f because the dunning letter uses the words "corporate advances" rather than attorney and property inspection fees. However, that argument misapprehends the import of section 1692f(1). The practice made illegal by this statute is the attempt to collect money that is not owed, because the consumer never agreed to the debt. *See, e.g.*, *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 949 (9th Cir. 2011) (finding a debt collection law firm violated 15 U.S.C. § 1692f by pursuing attorney fees

-8-

not authorized by a credit card agreement); *Bradley v. Franklin Collection Serv., Inc.*, 739 F.3d 606, 609 (11th Cir. 2014) (holding that debt collector, hired by two health care providers, violated 15 U.S.C. § 1692f by charging the debtor, a former patient, a collection fee based on a percentage of the principal balance of the debt due rather than the actual cost of collection, as authorized by the patient registration form). Mislabeling a debt item may be misleading, but it does not violate this section of the statute. *See Wahl v. Midland Credit Management, Inc.*, 556 F.3d 643, 645 (7th Cir. 2009) (debt collection letters that designated as the principal balance owed on a credit account an amount that included interest and late fees did not violated FDCPA provision against false or misleading information in collection notices). The defendant did not violate 15 U.S.C. § 1692f by using an umbrella term to reference fees explicitly authorized by the mortgage agreement.

2.

Where section 1692f addresses unconscionable practices, section 1692e addresses deceptive practices. Under 15 U.S.C. § 1692e, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. "A debt collector violates § 1692e, put simply, if the collection practice that he uses has the tendency to confuse the least sophisticated consumer." *Gillie v. Law Office of Eric A. Jones, LLC*, 785 F.3d 1091, 1106 (6th Cir. 2015) (citing *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir. 2006)). Wilson argues that Trott violated 15 U.S.C. § 1692e by describing a portion of his debt as a corporate advance rather than attorney or property inspection fees. Trott, of course, disagrees.

"In order to establish a claim under § 1692e: (1) plaintiff must be a 'consumer' as defined by the Act; (2) the 'debt' must arises out of transactions which are 'primarily for personal, family

or household purposes;' (3) defendant must be a 'debt collector' as defined by the Act; and (4) defendant must have violated '§ 1692e's prohibitions.'" *Wallace v. Washington Mut. Bank, F.A.*, 683 F.3d 323, 326 (6th Cir. 2012) (quoting *Whittiker v. Deutsche Bank Nat'l Trust Co.*, 605 F.Supp.2d 914, 926 (N.D.Ohio 2009)). Only the fourth element is at issue in this case. Although the FDCPA "does not require" a consumer to allege a violation of "any particular subpart of section 1692e," *Ruth v. Triumph Partnerships*, 577 F.3d 790, 795 n.2 (7th Cir. 2009), Wilson alleges that Trott violated 15 U.S.C. §§ 1692e(10) and 1692e(2)(A). "The use of any false representation or deceptive means to collect or attempt to collect any debt" violates 15 U.S.C. § 1692e(10); a false representation of "the character, amount, or legal status of any debt" violates 15 U.S.C. § 1692e(2)(A).

Wilson does not appear to dispute the amount or legal status of the debt. Instead, he alleges that Trott was misleading and deceptive when it characterized attorney and property inspection fees as a corporate advance.

In determining whether a statement qualifies as "misleading" or "deceptive," courts employ an objective test based on the understanding of the least-sophisticated consumer. *Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 592 (6th Cir. 2009); *Harvey*, 453 F.3d at 331. "This standard 'protects naive consumers [while] prevent[ing] liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care.'" *Miller*, 561 F.3d at 592 (quoting *Fed Home Loan Mortgage Corp. v. Lamar*, 503 F.3d 509-10 (6th Cir. 2007)). "Examples of conduct that other courts of appeals have deemed deceptive include impersonating a public official, falsely representing that

-10-

unpaid debts will be referred to an attorney, and misrepresenting the amount of the debt owed." *Harvey*, 453 F.3d at 331 (internal citations omitted).

More to the point here, "[o]nly material violations of the § 1692e prohibitions will result in liability." *Gillie*, 785 F.3d at 1106-07; *see also Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1034 (9th Cir. 2010) ("In assessing FDCPA liability, we are not concerned with mere technical falsehoods that mislead no one, but instead with genuinely misleading statements that may frustrate a consumer's ability to intelligently choose his or her response."). "The materiality standard simply means that in addition to being technically false, a statement would tend to mislead or confuse the reasonable unsophisticated consumer." *Wallace v. Washington Mut. Bank, F.A.*, 683 F.3d 323, 326-27 (6th Cir. 2012). "Thus, only misstatements that are important in the sense that they could objectively affect the least sophisticated consumer's decisionmaking are actionable." *Powell v. Palisades Acquisition XVI, LLC*, 782 F.3d 119, 126 (4th Cir. 2014). "[F]alse but non-material representations [that] are not likely to mislead the least sophisticated consumer . . . are not actionable." *Donohue*, 592 F.3d at 1033. That is because the statute is intended to protect consumers from "being intimidated or tricked by debt collectors." *O'Rourke v. Palisades Acquisition XVI, LLC*, 635 F.3d 938, 941 (7th Cir. 2011). The purpose of the FDCPA is not served by interfering with reasonable debt collection practices. *See* S. Rep. 95-382 ("[The FDCPA's] purpose is to protect consumers from a host of unfair, harassing, and deceptive debt collection practices without imposing unnecessary restrictions on ethical debt collectors.").

Generally, whether a debt collection letter is materially misleading is a question of fact. *See Buchanan v. Northland Grp., Inc.*, 776 F.3d 393, 397 (6th Cir. 2015); *Gilles*, 785 F.3d at 1108. "That is not to say that all such claims will go to a jury merely because they implicate a question of

-11-

fact." *Buchanan*, 776 F.3d at 397. "[S]uits alleging deceptive or misleading statements fall into three distinct categories." *Ruth*, 577 F.3d at 800. "In the first category are cases involving statements that plainly, on their face, are not misleading or deceptive." *Ibid.* "In these cases, we do not look to extrinsic evidence to determine whether consumers were confused." *Ibid.* "Instead, we grant dismissal or summary judgment in favor of the defendant based on our own determination that the statement complied with the law." *Ibid.* (collecting cases). "The second category of cases includes debt collection language that is not misleading or confusing on its face, but has the potential to be misleading to the unsophisticated consumer." *Lox v. CDA, Ltd.*, 689 F.3d 818, 822 (7th Cir. 2012). "In these cases, [the Seventh Circuit has] held that plaintiffs may prevail only by producing extrinsic evidence, such as consumer surveys, to prove that unsophisticated consumers do in fact find the challenged statements misleading or deceptive." *Ruth*, 577 F.3d at 800. A plaintiff in this situation must "come forward with evidence beyond the letter and beyond his own self-serving assertions that the letter is confusing in order to create a genuine issue of material fact for trial." *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 415 (7th Cir. 2005). Lastly, "[c]ases involving plainly deceptive communications fall into a third category, one where we will grant summary judgment for the plaintiffs without requiring them to prove what is already clear." *Ruth*, 577 F.3d at 801.

Neither party has focused in their briefs on the materiality element. However, it appears that the plaintiff believes that the debt collection letter should fall into the third category because the defendant is required to itemize the total amount of debt as a matter of law. But that is not entirely so. It is true that "debt collectors must . . . clearly and fairly communicate information about the amount of the debt to debtors. This includes how the total amount due was determined if the

-12-

demand for payment includes add-on expenses like attorneys' fees or collection costs." *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 565 (7th Cir. 2004). However, there is no language in the FDCPA that requires a debt collector to provide a complete breakdown of the debt owed. *See Hahn v. Triumph Partnerships LLC*, 557 F.3d 755, 756-57 (7th Cir. 2009) ("[A] debt collector need not break out principal and interest; it is enough to tell the debtor the bottom line . . . . A dollar due is a dollar due."); *Moran v. Greene & Cooper Attorneys LLP*, 43 F. Supp. 3d 907, 914-15 (S.D. Ind. 2014) ("A debt collector need not 'itemize' the debt, so long as its statement of the total is clear and accurate."); *Scioli v. Goldman & Warshaw P.C.*, 651 F. Supp. 2d 273, 281 n.15 (D.N.J. 2009) ("[T]he Court does not hold that a debt collector *must* itemize the fees and costs it seeks in order to comply with the FDCPA.").

The defendant implies, by contrast, that this case belongs in the first category because the letter plainly complied with the law since it was literally true, even if not a model of clarity. But that does not necessarily square with the general rule that section 1692e is violated if "the collection practice that he uses has the tendency to confuse the least sophisticated consumer." *Gillie*, 785 F.3d at 1106.

The case law shades both ways. For instance, in *Miller*, the Sixth Circuit found that a debt collector did not violate the FDCPA by characterizing credit card debt as a loan. 561 F.3d at 596-97. A debt collector filed a form debt-collection complaint to collect outstanding credit card debt. The state court complaint characterized the debt as a loan, rather than a "merchant's account receivable." However, the court of appeals found that even if unusual, the characterization of the debt did not violate the FDCPA. In reaching its conclusion, the court quoted favorably the Seventh

-13-

Circuit's decision in *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470 (7th Cir.

2007), which explained:

> Section 1692e does not require clarity in all writings. What it says is that "[a] debt
> collector may not use any false, deceptive, or misleading representation or means in
> connection with the collection of any debt." A rule against trickery differs from a
> command to use plain English and write at a sixth-grade level.

*Id.* at 593-94. Thus, the court of appeals explained, even if "novelly styled," the debt collector did

not go so far as to falsely describe the consumer's debt. *Id.* at 594; *see also Hahn*, 557 F.3d at 757

(finding that the plaintiff did not satisfy the materiality requirement under section 1692e based on

debt collection letter that mislabeled the amount of principal and interest, noting that "[a] dollar due

is a dollar due. Applying an incorrect rate of interest would lead to a real injury; reporting interest

in one line item rather than another (or in two line items) harms no one."); *Donahue*, 592 F.3d at

1027 (finding that the consumer did not satisfy the materiality requirement under the FDCPA

because she failed to show how the debt collector's error in including pre-assignment finance

charges in the line item for interest undermined the consumer's ability to intelligently choose her

response to the state court action).

By contrast, in *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562 (7th Cir. 2004), the Seventh

Circuit held that a debt collection letter that failed to separate attorney's fees from the principal debt

stated a claim under 15 U.S.C. § 1692e because it gave a false impression of the character of the

debt. The consumer incurred $122.06 in charges at an animal hospital. Six months later, after she

failed to pay any of the debt, the hospital hired a law firm to collect the debt. The firm sent the

plaintiff a dunning letter that stated that the account balance was $388.54, which reflected the

original $122.06 charge plus $250 in attorney fees. The court found that the letter, which did not

itemize the expenses, could mislead an unsophisticated consumer because it did not explain that it

was seeking attorney fees that were more than double the original obligation.  The court of appeals held that "[i]t is unfair to consumers under the FDCPA to hide the true character of the debt, thereby impairing their ability to knowledgeably assess the validity of the debt."  *Id.* at 56.  One way to comply with the FDCPA, the court of appeals suggested, would be to itemize the various charges that comprise the total amount of the debt.  *Id.* at 566; *see also Dougherty v. Wells Fargo Home Loans, Inc.*, 425 F. Supp. 2d 599, 607 (E.D. Pa. 2006) (plaintiff stated a claim for violation of 15 U.S.C. § 1692e through the use of deceptive phrases such as "recoverable corporate advances" to hide the collection of illegal attorney fees); *Porter v. Fairbanks Capital Corp.*, No. 01 C 9106, 2003 WL 21210115, at *5 (N.D. Ill. May 21, 2003) (plaintiff stated a claim under 15 U.S.C. § 1692e based on allegations that it was deceptive and misleading to characterize $2,164.54 as "recoverable corporate advances" on a debt collection letter when the line item for "legal fees" read $0.00).

Whether this case is more like *Miller* or *Fields* turns on how the characterization of the attorney fees and property inspection fees as a corporate advance would impact the least-sophisticated consumer.  The plaintiff does not home in on the question.  Instead, he argues in a conclusory fashion that he was confused by the term "corporate advance" because it does not appear anywhere in the mortgage.  But he does offer some evidence to support that argument.  He attests in his affidavit that "I don't know what a corporate advance is or why I owe it to Trott. . . . We looked for it in our mortgage but it is not stated what a corporate advance is.  I am confused as to what is included in this amount or why I owe this to Trott.".  Pl.'s Resp., Ex. 8, Wilson Aff. ¶¶ 3, 3.  Although there is no evidence to suggest that the defendant used the term "corporate advances" to trick the plaintiff into paying unauthorized fees or fees for services not yet performed, the applicable standard is an objective one, which requires looking to the statements through the eyes

-15-

of the least sophisticated consumer. *Miller*, 561 F.3d at 592; *Harvey*, 453 F.3d at 331. There is no dispute that the words "corporate advances" do not appear anywhere in the mortgage and the phrase, a term of art, is unlikely to be self-evident to an unsophisticated consumer. Certainly, a jrury could find that the letter would be misleading to an unsophisticated consumer, and it might affect his decisionmaking — that is, whether to pay or challenge that portion of the debt. In fact, it is unlikely that an unsophisticated consumer — any consumer, really — could respond to the dunning letter without any information about what "corporate advances" mean.

In all events, there is a fact question whether the use of the term "corporate advances" in the circumstances of this case is materially deceiving. The defendant has not shown that it is entitled to judgment as a matter of law on that part of the amended complaint based on 15 U.S.C. §1692e.

## B.

The defendant argues that the plaintiff's claim under the Michigan Collection Practices Act (MCPA) should be dismissed because the defendant is not a "regulated person" within the meaning of Michigan Compiled Laws § 445.251.

The MCPA, like its federal counterpart, the FDCPA, prohibits misleading and deceptive actions in collecting debt. The MCPA applies to "regulated person[s]," which the statute defines as "person[s] whose collection activities are confined and are directly related to the operation of a business other than that of a collection agency including . . . [a]n attorney handling claims and collections on behalf of a client in the attorney's own name." Mich. Comp. Laws § 445.251(g).

Trott relies on *Stocklinger v. Muller, Muller, Richmond, Harms, Myers, & Sgroi, P.C.*, No. 04-733, 2005 WL 2180481 (W.D. Mich. Sept. 9, 2005), for the proposition that it is not a regulated agency because its collection activities were on behalf of of Bayview Loan Servicing, LLC and not

in the firm's own name.  But courts in this district — including this Court — have held that a "law firm and its employees 'fit squarely within the definition of a regulating person' under the MCPA" regardless of whether the firm's collection activities were in its own name.  *Newman v. Trott & Trott, P.C.*, 889 F. Supp. 2d 948, 966-67 (E.D. Mich. 2012) (citations omitted); *see also Baker v. Residential Funding Co., LLC*, 886 F. Supp. 2d 591, 599 (E.D. Mich. 2012) (citing *Misleh v. Timothy E. Baxter & Associates*, 786 F. Supp. 1330 (E.D. Mich. 2011)); *Ward v. G. Reynolds Sims & Assoc.*, No. 12-CV-12078, 2013 WL 364012, at *3-4 (E.D. Mich. Jan. 30, 2013).

Trott is a regulated person within the meaning of the MCPA.

### III.

The use of the term "corporate advances" in the dunning letter in this case to describe costs and expenses actually incurred by the creditor is not an unfair or unconscionable practice within the meaning of 15 U.S.C. § 1692f(1).  However, a fact question remains whether that practice is deceptive or misleading under section 1692e of the FDCPA.

Accordingly, it is **ORDERED** that the defendant's motion for judgment on the pleadings or for summary judgment [dkt. #21] is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that the part of the plaintiff's amended complaint based on 15 U.S.C. § 1692f is **DISMISSED WITH PREJUDICE**.  The motion is **DENIED** in all other respects.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  July 29, 2015

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 29, 2015.

s/Susan Pinkowski
SUSAN PINKOWSKI